# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Brien O. Hill,<br><br>Plaintiff,<br><br>v.<br><br>Associates for Renewal in Education, Inc.,<br><br>Defendant. | Civil Action No. 12-0823 (JDB) |

## MEMORANDUM OPINION

Plaintiff, proceeding *pro se*, sues his former employer, Associates for Renewal in Education, Inc. ("ARE"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*. He claims that defendant (1) failed to accommodate his disability and (2) subjected him to a hostile work environment "based upon his disability and [] his exercise of protected FMLA rights." Complaint for Failure to Reasonably Accommodate a Known Disability and for Interference With FMLA Rights [Dkt. # 1] ¶ 2. The FMLA claim has been dismissed as time-barred. *See* Oct. 16, 2012 Mem. Op. and Order [Dkt. # 7].

Following a period of discovery, both parties have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* ARE's Mot. for Summ. J. [Dkt. # 32]; Pl.'s Not. of Mot. and Mot by Pl. for Summ. J. [Dkt. # 33]. Upon consideration of the parties' submissions and the relevant parts of the record, the Court will grant in part and deny in part

defendant's motion and will deny plaintiff's motion as non-compliant with the rules governing summary judgment motions.[1]

## BACKGROUND[2]

ARE is a non-profit agency funded by a grant from the District of Columbia that works "primarily with at-risk and underserved" individuals "through intervention, education and employment skills training." ARE's Statement of Material Facts as to Which There is No Genuine Issue ("Def.'s Facts") ¶ 3. As a juvenile, plaintiff was among ARE's targeted population and was first hired by ARE in 1997. Plaintiff "held several intern, secretarial and receptionist positions before his official acceptance of the ARE Secretary to the Deputy of Education position." Pl.'s Opp'g Facts [Dkt. # 38] at 2 (responding to Def.'s Facts ¶ 1). In 1999, plaintiff underwent surgery that resulted in the amputation of his left leg below the knee and his use of a prosthesis. Def.'s Facts ¶ 4; Decl. of Pl. Brien O. Hill in Supp. of Default J. [Dkt. # 33] ¶ 2.

A. Plaintiff's Work History

At an unspecified time and for unspecified reasons, plaintiff left ARE. *See* Pl.'s Opp'g Facts at 2. He was rehired in 2003 as a Program Aide in ARE's Developmental Before and

---

[1] In addition to the motions and supporting memoranda, the Court has considered ARE's Response to Plaintiff's Motion for Summary Judgment [Dkt. # 35], Plaintiff's Amended Opposition to Defendant's Motion for Summary Judgment [Dkt. # 38], ARE's Reply to Plaintiff Brien O. Hill's Response to Its Motion for Summary Judgment and Cross Motion of Plaintiff Hill for Summary Judgment [Dkt. # 39], Plaintiff's Supplemental Brief for Third Element of Plaintiff's Reasonable Accommodation Claim [Dkt. # 41], and Defendant ARE's Response to Plaintiff's Brief and the Court's Order to Supplement the Record Regarding the Third Element of the Plaintiff's Reasonable Accommodation Claim [Dkt. # 42].

[2] The record is replete with information that is irrelevant to the two remaining claims of failure to accommodate and hostile work environment. The complaint has not been amended, and it is too late in the proceedings to permit an amendment. Hence, the Court will refer only to those facts and parts of the record deemed relevant to resolving the foregoing claims.

Aftercare Program ("DBA"). *Id*. In May 2007, plaintiff fell while working at ARE's "outdoor . . . play surface" and "severely injured [his] amputated stump and damaged [his] prosthesis." Hill Decl. ¶ 5. He "returned to work bruised" on May 22, 2007; he requested, and was granted, a "class assistant" on behalf of himself and his "fellow . . . Co-teacher" who was "in the final trimester of pregnancy." *Id*. ¶ 6.

On August 27, 2007, plaintiff "was reassigned back to the position of a Program Aide from that of . . . Head Start Lead Teacher and placed in a classroom located on the third floor of [ARE's] three story school and office complex." *Id*. ¶ 7. As a result of a reduction in force and staff reassignments, plaintiff's position became part-time as of September 1, 2007. Def.'s Ex. C (Aff. of La'Troy R. Bailey [Dkt. # 32-1] ¶ 3 & Attachs. 1, 2). At that time, plaintiff's immediate supervisor was La'Troy R. Bailey, who "is classified as a C5 quadriplegic, which means a portion of her body is partially paralyzed." Def.'s Facts ¶¶ 7-8. Both Bailey and plaintiff were located on the third floor of ARE's building, which had no elevator. Def.'s Facts ¶ 8.

Bailey avers that prior to assuming her supervisory duties over plaintiff in August 2007, she was told by the Human Resources Department ("HR") about plaintiff's conduct that had "raised concerns," and she was "instructed . . . to start counseling and implementing a progressive discipline program in accordance with ARE['s] Employee Handbook." Bailey Aff. ¶ 7. On March 21, 2008, Bailey suspended plaintiff for three days without pay "for misbehaviors that included absence from work without notification; leaving the work site without notification and [] failure to adhere to department sign-in/out policies." *Id*. & Attach. 3. Bailey avers that plaintiff's behavior did not improve after the suspension. Specifically, "he continued to be insubordinate, by failing to perform [requested] duties" despite "continual verbal counseling and documentation of his conduct through early December [] 2008." *Id*. ¶ 8.

Defendant's HR Manager avers that in "the Fall of 2008" she learned that plaintiff "was harassing and attempting to intimidate his supervisor . . . Bailey." Def.'s Ex. B (Aff. of Talya C. Holloman [Dkt. # 32-1] ¶ 5). On December 12, 2008, Bailey recommended plaintiff's termination. Following a meeting that day attended by plaintiff, Bailey, Holloman and ARE's executive director, plaintiff was fired effective December 15, 2008. *Id.* ¶ 5; Bailey Aff. ¶ 8. The termination letter lists a "pattern of infractions" consisting of "insubordination and disrespectful conduct, excessive tardiness, falsification of timekeeping records, and violation of DBA call-in policy." Bailey Aff., Attach. 5.

B. <u>Plaintiff's Accommodation Requests</u>

Plaintiff admits in deposition testimony that he received requested accommodations throughout his employment, s*ee* Def's Facts ¶ 10, but stresses that he was accommodated only "up until 9/07." Pl.'s Opp'g Facts at 8. The parties diverge on whether plaintiff requested an accommodation after August 2007.

According to plaintiff, he "expressed [his] concerns" about being on the third floor during a telephone call with Bailey on August 31, 2007, and she instructed him "to put all [his] grievances in writing and submit them to her for review." Hill Decl. ¶ 8. Plaintiff further avers that on September 3, 2007, he "submitted to . . . Bailey" a written request to be "repositioned back to the lower level . . . and the accommodation of having an Aide assigned to my classroom . . .," which was "denied, even though all other Program Aides [Teachers] were assigned classroom aids [sic]." *Id.* ¶ 9 (bracket in original); Pl.'s Ex. K [Dkt. # 38, p. 108]. Plaintiff avers that he "made daily verbal request[s]" to Bailey throughout the school year for the same accommodation but was denied. Hill Decl. ¶¶ 10, 13. Plaintiff states that he "disagreed with and refused to sign" his annual performance evaluation in March 2008 because Bailey "was fully

4

aware . . . of my inability to fulfill the duties listed in my . . . evaluation as negative areas in need of improving, directly because" his "first written request on September 3, 2007" to be repositioned to the facility's lower level and for "the accommodation of [a classroom] Aide" had been denied.  *Id*. ¶ 12.  Plaintiff states that he conveyed the foregoing information in a meeting with Bailey and ARE's Director of Education Faye Mays-Bester held following his March 2008 evaluation.  *Id*.

According to defendant, "[a]t no time did [plaintiff] request from [Bailey] any accommodation or modification of his duties or work place," issues about which Bailey is "extremely sensitive" because of her own disability.  Bailey Aff. ¶ 6.  Similarly, HR Manager Holloman avers that while she was aware of plaintiff's disability and his assignment to the third floor, she never received a direct request from plaintiff for "any accommodation or assistance . . . or [a request] through his supervisors in carrying out his responsibilities."  Holloman Aff.  ¶ 4; *but see* Holloman Sept. 26, 2013 Depo. [Dkt. # 33-1] at 46 & Pl.'s Ex. K (responding "I don't recall" to plaintiff's question about receiving "on 10-6-2008" the September 3, 2007 accommodation request).

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made

for purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 323.

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *McKenzie v. Sawyer*, 684 F.2d 62, 68 n. 3 (D.C. Cir. 1982), *abrogated on other grounds by Berger v. Iron Workers Reinforced Rodmen*, 170 F.3d 1111 (D.C. Cir. 1999). Plaintiff has disputed some of defendant's facts but has not set forth his own statement of material facts he considers not in genuine dispute. Hence, the Court will deny plaintiff's motion for summary judgment since it does not comply with the rules governing summary judgment.

Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322-23. In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the Court must regard the non-movant's statements as true and accept all evidence and make all justifiable inferences in the non-movant's favor. *See Anderson*, 477 U.S. at 255. A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. *Id*. at 252. Moreover, "[i]f the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted). Summary judgment, then, is appropriate here if plaintiff fails to offer "evidence on which the jury could reasonably find for [him]" on an essential element of his claim. *Id*. at 252; *see Celotex*, 477 U.S. at 322-23.

## DISCUSSION

A. <u>Failure to Accommodate Claim</u>

The ADA bars a covered employer from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Failure to accommodate is one of four prohibited acts under the ADA. *See Floyd v. Lee*, 968 F. Supp. 2d 308, 315 (D.D.C. 2013) (citing *Aka v. Wash. Hosp. Ctr*., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc)); *see also* 42 U.S.C. § 12112(b)(5)(A) (the term discriminate includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity").

To survive summary judgment on his failure to accommodate claim, plaintiff must point to evidence in the record from which a reasonable jury could find that (1) he had a disability within the meaning of the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of the position with reasonable accommodation; and (4) his employer refused a reasonable request for accommodation. *See Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 153-54 (D.D.C. 2013). Because "[t]he employer's motivation for refusing the accommodation plays no part in [this] analysis, reasonable-accommodation claims are 'not subject to analysis under [the familiar] *McDonnell–Douglas*' " framework utilized in assessing

7

most employment discrimination claims. *Floyd*, 968 F. Supp. 2d at 316 (quoting *Aka*, 156 F. 3d at 1288, citing *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

The first and second elements of plaintiff's accommodation claim—whether he has a physical disability about which defendant was aware—are not in genuine dispute. As discussed next, the Court finds that summary judgment is defeated in part by the disputes surrounding the third and fourth elements of the claim, the latter of which will be addressed first.

1. The Disputed Fourth Element (Refusal of a Reasonable Request)

"An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Flemmings v. Howard Univ.*, 198 F. 3d 857, 861 (D.C. Cir. 1999). Upon an employer's receipt of a request for accommodation, "[t]he interactive process begins" and "both the employer and the employee have a duty to act in good faith" to "identify the precise limitations resulting from the disability and potential reasonable accommodations" that could overcome those limitations. *McNair v. District of Columbia*, --- F. Supp. 2d ---, 2014 WL 242913, at *5 (D.D.C. Jan. 23, 2014) (quoting 29 C.F.R. § 1630.2(o)(3); *Conneen v. MBNA Amer. Bank, N.A.*, 334 F.3d 318, 333 (3d Cir. 2003)) (internal quotation marks omitted). "[T]he absence of good faith, including unreasonable delays caused by the employer, can serve as evidence of an ADA violation." *Id.* Hence, "[t]o create an issue for the jury" on the fourth element of his claim, plaintiff must "produce sufficient evidence" that he requested an accommodation after "9/07," Pl.'s Opp'g Facts at 8, and "that, after the request, [defendant] refused to make an accommodation." *Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1308 (D.C. Cir. 2010); *see Edwards v. U.S. EPA*, 456 F. Supp. 2d 72, 102 (D.D.C. 2006) ("[T]he dispositive issue is whether [plaintiff] requested and was denied an accommodation.").

Here, whether plaintiff actually made the request at issue is a credibility question that is not appropriately decided on summary judgment. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions[.]"). Plaintiff has produced his written request for accommodation dated September 3, 2007, Pl.'s Ex. K, which he states was "submitted to [his] immediate supervisor . . . Bailey" that same day. Pl.'s Decl. ¶ 9. Plaintiff also states that he "made daily verbal request[s] to . . . Bailey" throughout the 2007-2008 academic year. *Id.* ¶ 10. Both Bailey and defendant's HR manager, Holloman, have stated under oath that they received no request from plaintiff for an accommodation. *See* Bailey Aff. ¶ 6; Holloman Aff. ¶ 4. During deposition testimony, however, Holloman responded "I don't recall" to plaintiff's question about receiving "on 10-6-2008 [sic]" the September 3, 2007 accommodation request shown to her at the deposition. Holloman Sept. 26, 2013 Depo. [Dkt. # 33-1] at 46. Defendant contends that the September 2007 request appeared for the first time in proceedings before the Equal Employment Opportunity Commission ("EEOC") in 2009, *see* Hill Decl. ¶ 19, and questions the validity of the document. Def.'s Mem. [Dkt. # 32] at 9. On summary judgment, however, it is not the Court's role to resolve the posed question of "why not one person at ARE was aware or had seen [the request] prior to its submission in proceedings before the [EEOC]." *Id*.

As a general rule applicable here, "statements made by the party opposing summary judgment must be accepted as true for the purpose of ruling on that motion[.]" *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (citing cases). Hence, whether defendant received the proffered request for accommodation is a threshold question that a jury must decide before reaching the central question of whether defendant refused a reasonable request for accommodation. For if a jury is convinced from the evidence that defendant did not receive the

9

request, the claim would fail as a matter of law.  Conversely, if a jury is convinced from the evidence--including plaintiff's testimony about his written and verbal requests made throughout the school year--that defendant did receive the request, it could reasonably find for plaintiff on this element since (1) defendant has not produced any evidence to dispute the reasonableness of the request, and (2) the evidence in the record establishes that plaintiff's similar requests were granted "on each occasion" prior to September 2007.  Def.'s Mem. at 9 (citing deposition testimony).

   2.  The Disputed Third Element (Performance of Essential Job Functions)

In response to the Court's July 2, 2014 Order to supplement the record on the third element of his accommodation claim, plaintiff provides an exhaustive list of job duties, including the following:

- Daily inspected each student for loose clothing and laces to prevent injury from falling.
- Logged and transported PM care students with an escort from their home school back to their assigned ARE DBA instructor.
- Daily reviewed and enforced in class and outdoor rules of safety.
- Practiced roll play for emergency and disaster readiness.
- Constructed plans for all aftercare outdoor play to be age appropriate ½ structured and ½ free play activities.
- Maintained daily attendance records and meal count sheets for my assigned classroom and completed then submitted all the monthly 3rd floor classroom's student attendance and meal count tallies to ARE administrative staff.
- Maintained . . . and distributed outdoor student equipment; balls, jump ropes, hula hoops . . . in the summer months.
- Daily modeled universal procedures for proper disposal of soiled tissues . . . .
- Ensured proper dress for outdoor play . . . .
- Daily practiced preventive measures to shield students from dehydration . . . .
- Constructed weekly lesson plan objectives . . . .

Pl.'s Supp. at 5-6.  The list continues for five more pages.  It is impossible to distill from plaintiff's laundry list of duties his "essential" functions, which are defined as "the fundamental

10

duties of the employment position the individual with a disability holds," exclusive of the "marginal functions of the position." *Baker v. Potter*, 294 F. Supp. 2d 33, 43 (D.D.C. 2003) (citations and internal quotation marks omitted). But plaintiff states that his physical disability "substantially limit[s] his ability [to] walk for long distances, stand for long periods of time (as required given that he supervised his classroom alone) and climb consecutive flights of stairs (as required for fire and emergency evacuation drills, supervised outdoor play and scheduled student lavatory breaks located on the basement floor . . . .) without the hazard of pain and bruises." Pl.'s Supp. at 3 (parentheses in original). Moreover, defendant has placed the written job description in the record, Def.'s Supp. Resp., Attach. A, which "shall be considered evidence of the essential functions of the job." *Dorchy v. WMATA*, 45 F. Supp. 2d 5, 12 (D.D.C. 1999) (quoting 42 U.S.C. § 12111(8)).

A reasonable jury could find from the evidence in the record that plaintiff's essential job functions required him to engage in physical activity with the students on a daily basis and that he had to "climb consecutive flights of stairs" to get to and from his third-floor office when he "supervised outdoor play and scheduled student lavatory breaks located on the basement floor." Pl.'s Supp. at 3. Plaintiff "attests" that he performed all of the listed job duties "alone" and "experienced grave hardships in doing so." Pl.'s Supp. at 12. In addition, plaintiff states that he refused to sign his annual performance evaluation in March 2008 because Bailey had given him a negative rating in unspecified areas of his job knowing that his September 3, 2007 accommodation request had not been granted.[3] Hill Decl ¶¶ 11-12.

---

[3] Plaintiff has not produced the unsigned performance evaluation, and the record shows that he refused to sign the March 21, 2008 Notice of Suspension. *See* Bailey Aff., Attach. 3 (containing handwritten notation of plaintiff's refusal to sign that document). On the other hand, defendant has not disputed plaintiff's statement or produced any contrary evidence, namely, the signed

Defendant counters that plaintiff could not perform the essential functions of his job with or without reasonable accommodation in large part because he was insubordinate toward his supervisor.[4] *See* Def.'s Supp. Resp. at 4-5. But evidence of plaintiff's insubordination is not significantly probative of the accommodation question. *See, e.g., Smith v. District of Columbia*, 271 F. Supp. 2d 165, 172 (D.D.C. 2003) (concluding that "alleged insubordination ha[d] nothing to do with whether [] home visits were an essential function of her job"). And, as previously explained, the validity of defendant's reasons for suspending and terminating plaintiff is not at issue. *See supra* at 7-8.

In his September 3, 2007 written request, plaintiff asked "to be reassigned back to the lower level of the facility where the kitchen and student lavatories are more assessable to me given my inability to regularly climb the several flights of stairs required to complete my daily scheduled student restroom, snack and water breaks." Pl.'s Ex. K. Plaintiff "declares" in his supplemental brief that when he returned to work on May 22, 2007, three days after his fall on May 19, 2007, he became "concern[ed] regarding the evacuation plans for the disable[d] employees . . . on the third floor in the untimely event of a fire or disaster." *Id*. He also feared from his fall the possibility "that the new untested prosthesis he'd be wearing [in] Fall 2007,

---

performance evaluation. Hence, plaintiff's statement is accepted as fact for purposes of resolving the instant motion.

[4] Defendant also points to plaintiff's three-day suspension in March 2008 "for misbehaviors that included absence from work without notification [and] leaving the work site without notification," and concludes that plaintiff "could not possibly perform the essential duties of his position . . . because he was not available to perform his duties." Def.'s Supp. Resp. at 5. But defendant has not pointed to any evidence establishing the frequency and circumstances of plaintiff's absences--particularly from April 2008 until his firing in December 2008--and the record shows that plaintiff was disciplined and ultimately terminated for "insubordination and disrespectful conduct, excessive tardiness, falsification of timekeeping records, and violation of [the employer's] call-in policy," Bailey Aff., Attach. 5, instead of his job performance per se.

might too perhaps break unannounced and quite possibly do so on a staircase, landing with his students in front and behind him as . . . they climbed the many flights of stairs together[.]" *Id*. at 12. Plaintiff states that it was those concerns that "brought about . . the birth of [his] . . . reasonable accommodation requests." *Id*. Plaintiff also "affirms" that in August 2007, he was unable "to daily climb the 6-8 flight of stairs to and from his newly assigned 3rd floor classroom as required for him to perform his job duties as assigned." Pl.'s Supp. at 15. The Court finds that plaintiff has stated sufficient facts to create a triable issue on whether he could have performed the essential functions of his job if relocated to a lower-level room.

As for the request for an Aide, plaintiff repeats throughout the record that all other program aides were assigned classroom assistants. Even if true, this fact is immaterial to the accommodation question absent evidence connecting the assistance of an Aide with the limitations of plaintiff's disability. In *Edwards v. EPA*, this Court explained that "employers must make changes to their policies or practices so as to place disabled employees on the same footing as nondisabled ones," but it concluded that the plaintiff "ha[d] not presented objective evidence that bringing his untrained dog to work would have been an effective means of resolving his stress," 456 F. Supp. 2d 72, 100 (D.D.C. 2006) (citing *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 400-01 (2002)) (internal quotation marks and other citations omitted). Similarly, the plaintiff in this case has not adduced any evidence to show that an Aide would have been an effective means of addressing the limitations imposed by his amputated leg, and "when an employee seeks a workplace accommodation, the 'accommodation must be related to the limitation that rendered the person disabled.' " *Adams v. Rice*, 531 F.3d 936, 944 (D.C. Cir. 2008) (quoting *Nuzum v. Ozark Auto. Distribs., Inc*., 432 F.3d 839, 848 (8th Cir. 2005)); *see id*. at 953 (quoting *Taylor v. Principal Fin. Group, Inc*., 93 F.3d 155, 164 (5th Cir. 1996) ("[T]he

ADA requires employers to reasonably accommodate limitations, not disabilities."). Hence, summary judgment is warranted on this aspect of plaintiff's accommodation claim.

B. Hostile Work Environment Claim

A hostile work environment rises to the level of unlawful discrimination when the workplace "is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'" *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). The alleged conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment—[one] that a reasonable person would find hostile or abusive." *Id*. at 21. In addition, "the victim [must] subjectively perceive the environment to be abusive" in order to show that the environment "actually altered the conditions of [his] employment." *Id*. at 21-22. In analyzing this claim, the Court must consider "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . ; and whether it unreasonably interferes with an employee's work performance." *Id*. at 23.

Plaintiff alleges generally in the complaint that defendant subjected him to a hostile work environment "based upon his disability and [] his exercise of protected FMLA rights." Compl. ¶ 2. But plaintiff does not allege any facts about his working conditions that rise to the level of the foregoing standard and, most detrimental at this post-discovery summary judgment stage, he has not adduced any evidence of such conditions. Hence, to the extent that plaintiff's hostile work environment claim survives, summary judgment is warranted. *See Celotex*, 477 U.S. at 323-24.

**CONCLUSION**

For the foregoing reasons, the Court concludes that defendant is entitled to judgment as a matter of law on (1) the ADA reasonable accommodation claim based on plaintiff's alleged request for an Aide, and (2) the hostile work environment claim. The Court further concludes that a material factual dispute exists with regard to plaintiff's reasonable accommodation claim based on his alleged request to be relocated to a lower-level room. Hence, defendant's motion for summary judgment is GRANTED in part and DENIED in part. A separate order accompanies this Memorandum Opinion.

_____s/_____
JOHN D. BATES
Date: September 29, 2014          United States District Judge